UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THOMAS JENNINGS,

Plaintiff,

- against -

THE CITY OF NEW YORK, Police Officer PEARCE
MARTINEZ, Shield No. 5461, Sergeant LENNY
LUTCHMAN, Shield No. 17480, JOHN DOE NUMBER
1 through 5, each officer in his individual and official
capacity as an employee of the City of New York, XYZ
CORP., a fictitious name for the entity d/b/a NEW YORK
FRIED CHICKEN, INC., RAHMAN MUHIBUR, an
employee of XYZ CORP., a fictitious name for the entity
d/b/a NEW YORK FRIED CHICKEN, INC.,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTIONS *IN LIMINE***

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Kaitlin Fitzgibbon*
*Tel: (212) 356-5057*

December 12, 2018

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. v

PRELIMINARY STATEMENT ........................................................................................... 1

BRIEF PROCEDURAL BACKGROUND .......................................................................... 2

                        Plaintiff's Voluntary Dismissal, With Prejudice, of All Claims Except Excessive Force .................................................................................................. 3

ARGUMENT

            POINT I

                        PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF INDEMNIFICATION OR REFERRING TO DEFENSE COUNSEL AS "CITY ATTORNEYS" ................................................................ 4

            POINT II

                        THE CAPTION SHOULD BE AMENDED TO REMOVE THE CITY OF NEW YORK AND JOHN DOE OFFICERS .......................................................... 5

            POINT III

                        PLAINTIFF SHOULD BE PRECLUDED FROM SUGGESTING A SPECIFIC DOLLAR AMOUNT TO THE JURY .......................................................................... 6

            POINT IV

                        PLAINTIFF SHOULD BE PRECLUDED FROM ELICITING EVIDENCE OF DISCIPLINARY HISTORIES AND PRIOR LAWSUITS .................................... 7

                        A.  Plaintiff should be precluded from eliciting evidence of defendants' disciplinary histories .................................... 7

                        B.  Plaintiff should be precluded from eliciting evidence of defendants' prior lawsuits. .............................................. 8

POINT V

      PLAINTIFF SHOULD BE PRECLUDED FROM
      REFERENCING UNRELATED ALLEGATIONS
      OF POLICE MISCONDUCT, EVENTS IN THE
      NEWS, AND FROM USING INFLAMMATORY
      LANGUAGE ............................................................................................. 9

POINT VI

      PLAINTIFF SHOULD BE PRECLUDED FROM
      REFERRING TO AND OFFERING EVIDENCE
      AT TRIAL OF ANY NEW YORK CITY POLICE
      DEPARTMENT PROCEDURE OR PATROL
      GUIDE PROVISION ............................................................................. 10

POINT VII

      PLAINTIFF SHOULD BE PRECLUDED FROM
      ARGUING OR SUBMITTING EVIDENCE THAT
      THE OFFICERS SHOULD HAVE RESPONDED
      IN A DIFFERENT MANNER OR THAT THEY
      SHOULD HAVE USED LESSER OR
      DIFFERENT FORCE ............................................................................. 12

POINT VIII

      PLAINTIFF SHOULD BE PRECLUDED FROM
      PRESENTING EVIDENCE REGARDING ANY
      CLAIMS WHICH HAVE BEEN DISMISSED ...................................... 13

POINT IX

      PLAINTIFF SHOULD BE PRECLUDED FROM
      INTRODUCING VIDEOS THAT DO NOT
      DEPICT THE EVENTS AT ISSUE ........................................................ 15

POINT X

      PLAINTIFF SHOULD BE PRELUDED FROM
      OFFERING HIS PROPOSED PHOTOGRAPH AS
      EVIDENCE OF PLAINTIFF'S INJURIES............................................. 16

POINT XI

      PLAINTIFF SHOULD BE PRECLUDED FROM
      MENTIONING OR INTRODUCING EVIDENCE
      OF THE IAB AND CCRB INVESTIGATIONS ..................................... 17

POINT XII

      PLAINTIFF SHOULD BE PRECLUDED FROM
      CALLING THREE TREATING PHYSICIANS AS
      WITNESSES............................................................................................ 19

      A.  Dr. Anthony Gomez.......................................................................... 19

      B.  Dr. Kathleen Edouard ...................................................................... 19

      C.  Dr. Ping Lien ................................................................................... 20

POINT XIII

      PLAINTIFF SHOULD BE PRECLUDED FROM
      CALLING ANY WITNESS WHO WAS NOT
      PROPERLY DISCLOSED DURING DISCOVERY
      AT TRIAL .............................................................................................. 20

POINT XIV

      PLAINTIFF SHOULD BE PRECLUDED FROM
      ELICITING TESTIMONY OR INTRODUCING
      EVIDENCE OF THE DEFENDANT OFFICERS'
      RELATIONSHIP...................................................................................... 22

POINT XV

      PLAINTIFF SHOULD BE PRECLUDED FROM
      INTRODUCING EVIDENCE ABOUT HIS PRIOR
      LAWSUIT............................................................................................... 23

POINT XVI

      DEFENDANTS SHOULD BE PERMITTED TO
      INTRODUCE RELEVANT PORTIONS OF
      PLAINTIFF'S CRIMINAL HISTORY ................................................... 23

POINT XVII

DEFENDANTS RESERVE THEIR RIGHT TO
FILE SUPPLEMENTAL MOTIONS *IN LIMINE* ................................... 24

CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                      **Pages**

Bynum v. Metro. Transp. Auth.,
    2006 U.S. Dist. LEXIS 98617 (E.D.N.Y. 2006)........................................................20

Castro v. City of New York,
    2009 U.S. Dist. LEXIS 69723 (E.D.N.Y. 2009).....................................................21

Consorti v. Armstrong World Industries, Inc.,
    72 F.3d 1003 (2d Cir. 1995)..........................................................................6, 7

Eng v. Blood,
    04 Civ. 1146 (NAM) (GHL),
    2008 U.S. Dist. LEXIS 54802 (N.D.N.Y. July 17, 2008).......................................13

Figueroa v. Boston Sci. Corp.,
    00 Civ. 7922 (DC),
    2003 U.S. Dist. LEXIS 10936 (S.D.N.Y. June 25, 2003)......................................8-9

Galapo v. City of New York,
    95 N.Y.2d 568 (N.Y. 2000) ...............................................................................11

Graham v. Connor,
    490 U.S. 386 (1989)..........................................................................................12

Hernandez v. Kelly,
    09-CV-1576 (TLM) (LB),
    2011 U.S. Dist. LEXIS 57114 (E.D.N.Y. May 27, 2011) .......................................4

Huddleston v. United States,
    485 U.S. 681 (1988)............................................................................................8

Jackson v. Firestone Tire & Rubber Co.,
    788 F.2d 1070 (5th Cir. 1986) ......................................................................16, 17

Jean-Laurent v. Hennessy,
    05-CV-1155 (KAM) (LB),
    2011 U.S. Dist. LEXIS 122767 (E.D.N.Y. Oct. 24, 2011).......................................4

Jean-Laurent v. Hennessy,
    840 F. Supp. 2d 529 (E.D.N.Y. 2011) .................................................................6

Jean-Laurent v. Wilkinson,
    05 Civ. 0583 (VM),
    2009 U.S. Dist. LEXIS 20472 (S.D.N.Y. Mar. 13, 2009) .......................................5

**Cases**                                                                                                          **Pages**

Lennon v. Miller,
   66 F.3d 416 (2d Cir. 1995)................................................................................................12

Lombardo v. Stone,
   99 Civ. 4603 (SAS),
   2002 U.S. Dist. LEXIS 1267 (S.D.N.Y. Jan. 29, 2002)...........................................8

Martin v AMTRAK,
   97 Civ. 8381 (RLE),
   1998 U.S. Dist. LEXIS 13979 (S.D.N.Y. Sep. 3, 1998).........................................24

Mathie v. Fries,
   121 F.3d 808 (2d Cir. 1997)..............................................................................................5

Mileski v. Long Island R.R. Co.,
   499 F.2d 1169 (2d Cir. 1974)............................................................................................6

Nibbs v. Goulart,
   822 F. Supp. 2d 339 (S.D.N.Y. 2011)...............................................................................9

Patterson v. Balsamico,
   440 F.3d 104 (2d Cir. 2006)............................................................................................21

Phelps v. Szubinski,
   577 F. Supp. 2d 650 (E.D.N.Y. 2008) ............................................................................12

Plakas v. Drinski,
   19 F.3d 1143 (7th Cir. 1994),
   cert. denied, 115 S. Ct. 81 (1994) ..................................................................................12

Rasmussen v. City of New York,
   766 F. Supp. 2d 399 (E.D.N.Y. 2011) ..............................................................................6

Richmond v. General Nutrition Ctrs., Inc.,
   08 Civ. 3577 (PAE)(HBP),
   2012 U.S. Dist. LEXIS 32070 (S.D.N.Y. Mar. 9, 2012) ......................................8

Romero v. County of Lake,
   60 F.3d 702 (10th Cir. 1995) ..........................................................................................11

Scott v. Henrich,
   39 F.3d 912 (9th Cir. 1994) ............................................................................................12

Smith v. Freland,
   954 F.2d 343 (6th Cir. 1992) ..........................................................................................11

**Cases**                                                                                       **Pages**

Williams v McCarthy,
    05 Civ. 10230 (SAS),
    2007 U.S. Dist. LEXIS 79151 (S.D.N.Y. Oct. 25, 2007) .......................................24

**Statutes**

42 U.S.C. § 1983 .............................................................................................2, 3, 11

42 U.S.C. § 1985 ............................................................................................................3

42 U.S.C. § 1988 ............................................................................................................3

Fed. R. Civ. P. 26 ........................................................................................................20

Fed. R. Civ. P. 26(a) ...................................................................................................20

Fed. R. Civ. P. 37(c)(1) .........................................................................................20, 21

Fed. R. Civ. P. 41(a) ...................................................................................................13

Fed. R. Evid. 401 ........................................................................................................14

Fed. R. Evid. 402 ................................................................4, 10, 11, 12, 14, 23

Fed. R. Evid. 403 ....................................4, 7, 8, 9, 10, 12, 14, 16, 19, 23

Fed. R. Evid. 404(b) ................................................................................................7, 8

Fed. R. Evid. 411 ..........................................................................................................5

Fed. R. Evid. 609(a)(2) ........................................................................................23, 24

Fed. R. Evid. 801 ........................................................................................................18

Fed. R. Evid. 801(c) ..............................................................................................10, 18

Fed. R. Evid. 801(d)(2) ..............................................................................................18

Fed. R. Evid. 803 ........................................................................................................18

N.Y. Pen. Law §165.30 ........................................................................................23, 24

**Other Authorities**

McCormick § 168; Annot., 4 A.L.R.2d 761 ................................................................5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

THOMAS JENNINGS,

                         Plaintiff,

         -against-

THE CITY OF NEW YORK, Police Officer PEARCE
MARTINEZ, Shield No. 5461, Sergeant LENNY
LUTCHMAN, Shield No. 17480, JOHN DOE NUMBER 1
through 5, each officer in his individual and official
capacity as an employee of the City of New York, XYZ
CORP., a fictitious name for the entity d/b/a NEW YORK
FRIED CHICKEN, INC., RAHMAN MUHIBUR, an
employee of XYZ CORP., a fictitious name for the entity
d/b/a NEW YORK FRIED CHICKEN, INC.,

                        Defendants.

------------------------------------------------------------------------ x

**MEMORANDUM OF
LAW IN SUPPORT
OF DEFENDANTS'
MOTIONS *IN LIMINE***

17 CV 3172 (LDH) (PK)

## <u>PRELIMINARY STATEMENT</u>

       Plaintiff Thomas Jennings brings this action against defendants Pearce Martinez and

Lenny Lutchman (hereinafter "defendants"), alleging a federal claim of excessive force.  In

accordance with the applicable Federal Rules of Civil Procedure, the Federal Rules of Evidence,

and this Court's Individual Rules of Practice, defendants respectfully submit this memorandum

of law seeking the following relief *in limine*: (1) Plaintiff should be precluded from eliciting

testimony regarding indemnification by the City of New York or referring to defense counsel as

"City attorneys"; (2) The caption should be amended to remove the City of New York and John

Doe officers; (3) Plaintiff should be precluded from suggesting a dollar amount to the jury;

(4) Plaintiff should be precluded from questioning any officers regarding disciplinary history and

prior lawsuits; (5) Plaintiff should be precluded from referencing unrelated allegations of police misconduct, events in the news, and using inflammatory language; (6) Plaintiff should be precluded from referencing the New York City Police Department Procedures or the Patrol Guide; (7) Plaintiff should be precluded from arguing or submitting evidence that the officers should have responded in a different manner; (8) Plaintiff should be precluded from presenting evidence regarding any claims which have been dismissed; (9) Plaintiff should be precluded from introducing videos that do not depict the events at issue; (10) Plaintiff should be precluded from mentioning or introducing evidence of the IAB and CCRB investigations; (11) Plaintiff should be precluded from calling three treating physicians as witnesses to testify at trial; (12) Plaintiff should be precluded from calling any witness who was not properly disclosed during discovery to testify at trial; (13) Plaintiff should be precluded from eliciting testimony of the defendants' personal relationship; (14) Plaintiff should be precluded from introducing evidence about his prior lawsuit; and (15) Defendants should be permitted to introduce relevant portions of plaintiff's criminal history .

## **BRIEF PROCEDURAL BACKGROUND**

In May 2017, plaintiff filed this cause of action under 42. U.S.C. § 1983  in relation to his July 7, 2015 arrest for armed robbery based upon the positive identification by a complaining victim, Mr. Muhibir Rahman.  Ultimately, the charges against plaintiff stemming from this arrest were dismissed because Mr. Rahman declined to cooperate in the prosecution.  In plaintiff's Complaint, filed on May 25, 2017, plaintiff alleged that Police Officer Pearce Martinez and Police Officer Lenny Lutchman falsely arrested plaintiff, used excessive force to effect his arrest, and failed to intervene in this conduct.  (See Docket Entry No. 1, Complaint, (hereinafter "Compl.") at ¶¶ 52-57, 67-70).  Plaintiff's Complaint further alleged federal claims of malicious

prosecution, denial of right to a fair trial, 42 U.S.C. §§ 1983 and 1985 violations of conspiracy, and a Monell claim against the City of New York. (Compl. at ¶¶ 58-66, 71-77, 81-87).

### A. *Plaintiff's Voluntary Dismissal, With Prejudice, of All Claims Except Excessive Force*

By letter dated September 4, 2018, plaintiff's counsel, Michael Lumer, Esq., informed this Court that plaintiff intended to "withdraw his claims against [defendants Martinez and Lutchman] sounding in false arrest, malicious prosecution, denial of right to fair trial, and failing to intervene in each other's conduct, as well as all direct claims against the City of New York." (See Docket Entry No. 52). On September 11, 2018 the parties field a Stipulation of Partial Dismissal and Withdrawal With Prejudice, whereby plaintiff withdrew all aforementioned claims such that "[t]he only remaining claims are plaintiff's cause of action pursuant to 42 U.S.C. § 1983 for excessive force against individual defendants Officer Pearce Martinez and Officer Lenny Lutchman, and plaintiff's request for legal fees and costs pursuant to 42 U.S.C. § 1988." (See Docket Entry No. 53). On September 18, 2018, the Court So Ordered the parties' Stipulation and dismissed plaintiff's claims for false arrest, malicious prosecution, denial of right to fair trial, failure to intervene, conspiracy, and plaintiff's Monell claim against the City of New York. (See Docket Entry No 55). Accordingly, the sole claim to be tried in this matter is plaintiff's alleged federal excessive force claim against defendants Martinez and Lutchman.

## ARGUMENT

### POINT I

### PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF INDEMNIFICATION OR REFERRING TO DEFENSE COUNSEL AS "CITY ATTORNEYS"

The City of New York is no longer a defendant to this matter.  Any mention of the City of New York would only be for the purpose of prejudicing the individual defendants because then the jury would be inclined to award plaintiff more money under the assumption that the City of New York is a "deep pocket" who can afford to pay a higher judgment than the individual officers would be able to on their own.  The same prejudice would occur if plaintiff is permitted to inform the jury that the attorneys for the individual defendants are employed by the government as "City attorneys."  See e.g. Hernandez v. Kelly, 09-CV-1576 (TLM) (LB), 2011 U.S. Dist. LEXIS 57114, at *17-18 (E.D.N.Y. May 27, 2011) (where the City was not a defendant, precluding plaintiff from referring to the City and directing him to refer to defense counsel as attorneys from the Office of Corporation Counsel); see also Jean-Laurent v. Hennessy, 05-CV-1155 (KAM) (LB), 2011 U.S. Dist. LEXIS 122767, at *45-46 (E.D.N.Y. Oct. 24, 2011). Accordingly, defendants respectfully request that no mention of the City of New York be made at the trial and defense counsel be referred to as precisely that, "defense counsel."

Indemnification also has no bearing on the facts of plaintiff's claims or damages, and would only serve to unfairly prejudice the defendants.  Therefore, pursuant to Rule 402 and 403, plaintiff should not be allowed to introduce or otherwise refer to the possibility that the City of New York will indemnify the defendant officers.  If the jury is permitted to assume that the City of New York will pay a judgment, the jury may not carefully assess issues of liability in light of the competent evidence presented. This unfortunate prejudice is precisely the concern that

motivated the drafters of the Federal Rules of Evidence to include Rule 411, which prohibits the admission of evidence of a defendant's liability insurance. See Fed. R. Evid. 411 Advisory Committee's Note ("More important, no doubt, has been the feeling that knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds. McCormick § 168; Annot., 4 A.L.R.2d 761."). Defendants will not proffer evidence regarding their personal financial resources and ability to pay punitive damages at trial. Therefore, based upon the established precedent in this Circuit, there is no relevant basis for the admission of indemnification evidence at trial and, accordingly, such evidence should be precluded. See Mathie v. Fries, 121 F.3d 808, 816 (2d Cir. 1997) (the existence of an indemnification agreement is relevant only where the defendants adduce evidence of their personal financial resources at trial); see also Jean-Laurent v. Wilkinson, 05 Civ. 0583 (VM), 2009 U.S. Dist. LEXIS 20472, at *8 (S.D.N.Y. Mar. 13, 2009) (precluding admission at trial of evidence of potential indemnification of defendant police officers by the City of New York).

## POINT II

### THE CAPTION SHOULD BE AMENDED TO REMOVE THE CITY OF NEW YORK AND JOHN DOE OFFICERS

The sole claim to be tried in this matter is plaintiff's alleged federal excessive force claim. The Monell claim against the City of New York was dismissed by stipulation between the parties on September 18, 2018. (See Docket Entry No. 55). Furthermore, plaintiff did not plead a claim of *respondeat superior* against the City of New York, nor has he brought any claims under state law or complied with the conditions precedent to permit such claims. Thus, any mention of the fact that the City of New York was a defendant would be unnecessary, prejudicial and would only serve to confuse the jury. Should the jury be advised that the City of New York was a defendant under the circumstances presented herein it would be highly prejudicial to

defendants. Accordingly, the jury should not be advised of the fact that the City of New York was a defendant for a period of time in this matter and it should be removed from the caption.

Moreover, the remaining "John Doe" officers should be removed from the caption and dismissed from this action. A plaintiff may not "maintain a suit against officers on a "John Doe" basis, or even to sue some by name and then assert claims against unnamed defendants, and expect to receive a verdict and judgment against the named officers based on what John Doe allegedly did." Rasmussen v. City of New York, 766 F. Supp. 2d 399, 412 (E.D.N.Y. 2011); see also Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 557 (E.D.N.Y. 2011). Thus, any reference to other John Doe officers would only serve to confuse the jury, leading them to unfairly hold the defendants responsible for actions that other individuals may have taken for which they have no actual responsibility. Therefore, the "John Doe" officers should be removed from the caption and dismissed from this action as well.

## POINT III

### PLAINTIFF SHOULD BE PRECLUDED FROM SUGGESTING A SPECIFIC DOLLAR AMOUNT TO THE JURY

Plaintiff should be precluded from suggesting a specific dollar amount to the jury. While the Second Circuit has not adopted a flat prohibition of suggesting a specific dollar amount to the jury, it does disfavor specifying target amounts for the jury to award. Consorti v. Armstrong World Industries, Inc., 72 F.3d 1003 (2d Cir. 1995). Such suggestions unlawfully anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence. Id.; see also Mileski v. Long Island R.R. Co., 499 F.2d 1169, 1172 (2d Cir. 1974) ("A jury with little or no experience in such matters, rather than rely upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel . . ."). The Court in Consorti went on to state:

> A jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent. Specific proposals have a real potential to sway the jury unduly. . . . We encourage trial judges to bar such recommendations.

Consorti, 72 F.3d at 1016. As such, plaintiff should be precluded from suggesting a specific dollar amount to the jury during the opening statement, during the testimony of any witness, and/or during summation.

## POINT IV

## PLAINTIFF SHOULD BE PRECLUDED FROM ELICITING EVIDENCE OF DISCIPLINARY HISTORIES AND PRIOR LAWSUITS

Plaintiff should be precluded from inquiring about any disciplinary histories, and/or civil rights actions which have been filed against defendants Martinez or Lutchman, or any witness officers, because such questioning is in direct conflict with Federal Rule of Evidence 404(b).

**A. Plaintiff should be precluded from eliciting evidence of defendants' disciplinary histories.**

Rule 404(b) states that evidence of past acts "to prove the character of a person in order to show action in conformity therewith" is inadmissible. In the event that plaintiff should seek to introduce evidence of prior or subsequent allegations of misconduct against defendants or other police officers arising out of unrelated incidents, or attempts to suggest that defendants have such allegations, he should be precluded from doing so because any such evidence is irrelevant and prohibited by Federal Rules of Evidence 404(b) and 403.

Rule 404(b) prohibits the use of evidence of past acts "to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Rule 404(b) only permits the use of evidence of past acts for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. However, evidence of prior

bad acts is not automatically admissible simply because the proponent has articulated some not-for-character purpose. As the Supreme Court held in <u>Huddleston v. United States</u>, 485 U.S. 681, 688 (1988), the decision to admit evidence under Rule 404(b) depends on "whether the danger of unfair prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." Thus, Rule 404(b) requires a two-part analysis: first, whether the proposed evidence fits within one of the exceptions provided by the Rule, and, second, whether under Rule 403 the probative value is substantially outweighed by the potential for jury confusion or prejudice. <u>Lombardo v. Stone</u>, 99 Civ. 4603 (SAS), 2002 U.S. Dist. LEXIS 1267, at *8 (S.D.N.Y. Jan. 29, 2002); <u>see also</u> Advisory Committee Notes to Fed. R. Evid. 404(b).

In this case, any reference to the defendants' disciplinary histories does not fall under any of the 404(b) exceptions. Second, the potential for confusion or prejudice substantially outweighs any probative value. Applying these factors, plaintiff should be precluded from questioning defendants Martinez and Lutchman regarding their disciplinary history.

**B. Plaintiff should be precluded from eliciting evidence of defendants' prior lawsuits.**

For the same reasons set forth above, plaintiff should also be precluded from proffering evidence or eliciting testimony regarding any defendants' prior or subsequent lawsuits and settlements. Courts in this Circuit have applied the same analysis to prior civil lawsuits, finding that the probative value of introducing prior lawsuits is outweighed by the prejudicial effect such evidence could have and its potential to confuse the jury. <u>See</u> <u>Richmond v. General Nutrition Ctrs., Inc.</u>, 08 Civ. 3577 (PAE)(HBP), 2012 U.S. Dist. LEXIS 32070, at *31 (S.D.N.Y. Mar. 9, 2012) (precluding the introduction of evidence of lawsuits against defendant because "the risk of unfair prejudice and confusion from introducing documents reflecting allegations in other cases clearly outweighs the probative value of such claims."); <u>see also</u> <u>Figueroa v. Boston Sci. Corp.</u>,

00 Civ. 7922 (DC), 2003 U.S. Dist. LEXIS 10936, at *11 (S.D.N.Y. June 25, 2003) (finding that the probative value of introducing evidence of other lawsuits is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, and considerations of undue delay and waste of time."). The probative value of any prior or subsequent lawsuits is extremely low while the prejudicial effect of this evidence is high. Moreover, any use of prior lawsuits to impeach a defendant "invites the jury to draw the conclusion that [the] defendant regularly [acts improperly]." <u>Nibbs v. Goulart</u>, 822 F. Supp. 2d 339, 349 (S.D.N.Y. 2011). As such, this evidence should also be precluded pursuant to Fed. R. Evid. 403.

**POINT V**

**PLAINTIFF SHOULD BE PRECLUDED FROM REFERENCING UNRELATED ALLEGATIONS OF POLICE MISCONDUCT, EVENTS IN THE NEWS, AND FROM USING INFLAMMATORY LANGUAGE**

Defendants request that the Court bar plaintiff from referring to unrelated purported instances of police misconduct, class actions and criminal investigations. Defendants submit that references to other allegations of police misconduct unrelated to this case are irrelevant, inadmissible, and would only serve to inflame the jury against the defendants and the New York City Police Department.

Allegations of misconduct by non-party officers that plaintiff claims to have witnessed or that have been reported in the media should be precluded. Such evidence is highly prejudicial, is meant to inflame the jury, and has no probative value as to the facts and circumstances of the incident in this matter. Whether some other officer at some other time allegedly violated the constitutional rights of another person has no capacity to establish or refute the salient facts of this matter. Further, defendants in this case are also unable to defend or reject the conduct of other officers or events in other municipalities. Lastly, allowing plaintiff's counsel to make such

references would allow inadmissible hearsay because plaintiff would be seeking to offer out of court statements for their truth. Fed. R. Evid. 801(c).

Finally, plaintiff should be barred from using terminology and colloquialisms such as "testilying" and "blue wall of silence." Such statements are also highly prejudicial and inflammatory. Because these terms are based on conjecture and emotion and not based on any evidence presented in this case, the officers have no means to defend against their use or refute the characterization implied by the speaker. Further, usage of these terms as well as other allegations of misconduct turn plaintiff's counsel into a witness because he or she implies that they have some special knowledge of the goings on of police officers. This in turn is itself highly prejudicial, because there is no evidence in this trial to prove or disprove that implication. As a result, the Court should bar plaintiff from referencing any of these phrases or terms, other lawsuits or events reported in the media.

**POINT VI**

**PLAINTIFF SHOULD BE PRECLUDED FROM REFERRING TO AND OFFERING EVIDENCE AT TRIAL OF ANY NEW YORK CITY POLICE DEPARTMENT PROCEDURE OR PATROL GUIDE PROVISION**

Plaintiff should be precluded from referring to and offering any evidence of New York City Police Department ("NYPD") procedure or patrol guide provisions. Alleged violations of NYPD procedure by the individual defendants are irrelevant to the determination of whether plaintiff's constitutional rights were violated. Thus, any NYPD procedure or patrol guide provisions should be precluded pursuant to Fed. R. Evid. 402 and 403.

First, the standards set forth as per NYPD procedure are merely guidelines established by the New York City Police Department, and are not the standards of the United States Constitution. In light of plaintiff's claims that his constitutional rights were violated, any NYPD

guidelines, whether or not followed to the letter, are irrelevant to the determination of whether plaintiff's constitutional rights were violated.  See Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992) ("[u]nder § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force.  A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983"); Romero v. County of Lake, 60 F.3d 702, 705 (10th Cir. 1995) ("violations of state law and police procedure generally do not give rise to a 1983 claim"); see also Galapo v. City of New York, 95 N.Y.2d 568, 574-75 (N.Y. 2000) (NYPD Patrol Guide should be excluded from evidence because it does not create legal duties).  Since NYPD procedures do not create legal duties, they are irrelevant to the determination of whether plaintiff's constitutional rights were violated and should therefore be precluded under Fed. R. Evid. 402.

Second, any reference to alleged "violations" of NYPD procedure, meaning that the individual defendant did not follow the exact guidelines, would only confuse the jury.  The jury will be called upon to determine whether the defendants violated plaintiff's constitutional rights, which is to be evaluated by the jury under the Fourth Amendment standard.  If the jury is presented with any portion of an NYPD procedure, it is likely to wrongly assume that NYPD procedure sets out the standard by which they are to evaluate the defendants' alleged unconstitutional actions, notwithstanding a contrary instruction from the Court.  It is certainly in the realm of possibility that an officer could follow NYPD procedure and still violate an individual's constitutional rights or not follow NYPD procedure and not violate an individual's rights.  Therefore, any references to alleged "violations" of NYPD procedure are irrelevant, unfairly prejudicial, and would only confuse the issues and the jury.  Accordingly, the Patrol

Guide, as well as testimony regarding NYPD procedure, should therefore be precluded pursuant to Fed. R. Evid. 402 and 403.

### POINT VII

**PLAINTIFF SHOULD BE PRECLUDED FROM ARGUING OR SUBMITTING EVIDENCE THAT THE OFFICERS SHOULD HAVE RESPONDED IN A DIFFERENT MANNER OR THAT THEY SHOULD HAVE USED LESSER OR DIFFERENT FORCE**

Arguments or evidence that the officers should have responded in a different manner or that the officers should have used less or different force should be excluded because it is not relevant to the main issue in this case, which is whether any force used by defendants in the course of plaintiff's arrest was reasonable. As the Supreme Court stated in Graham v. Connor, 490 U.S. 386, 396 (1989), "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer *on the scene*, rather than with the 20/20 vision of hindsight." (emphasis added); Phelps v. Szubinski, 577 F. Supp. 2d 650, 661 (E.D.N.Y. 2008).

In other words, the Fourth Amendment only requires that the use of force be objectively reasonably, not that the officer pursued the most prudent course of conduct judged by 20/20 hindsight. See Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995) ("[W]e are not concerned with the correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene."); see also Scott v. Henrich, 39 F.3d 912, 914 (9th Cir. 1994) ("as the text of the Fourth Amendment indicates, the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them"); Plakas v. Drinski, 19 F.3d 1143, 1149 (7th Cir. 1994) ("[T]he Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternatives in search and seizure cases. The only test is whether what the police

officers actually did was reasonable"), cert. denied, 115 S. Ct. 81 (1994). Indeed, typical jury instructions for excessive force claims clearly direct the jury not to examine any use of force with 20/20 hindsight: and most certainly not to examine the least amount of force. If jurors are so instructed, it is simply not logical to allow testimony or other evidence in contradiction to these instructions.

The Fourth Amendment inquiry focuses not on what the most prudent course of action may have been or whether there were other alternatives available, but instead whether the seizure actually effectuated falls within a range of conduct which is objectively "reasonable" under the Fourth Amendment. Alternative measures, which 20/20 hindsight and the calm of the courtroom reveal to be less intrusive (or more prudent), such as employing other methods of restraining or detaining an individual are simply not relevant to the reasonableness inquiry.

### POINT VIII

### PLAINTIFF SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE REGARDING ANY CLAIMS WHICH HAVE BEEN DISMISSED

Plaintiff should be precluded at trial from introducing any evidence regarding any claims or damages attendant to claims that were already dismissed by the Court pursuant to Fed. R. Civ. P. 41(a). Of particular importance, plaintiff should not be permitted to offer any testimony, or argue to the jury, regarding his claims for false arrest, malicious prosecution, denial of right to fair trial, failure to intervene, and municipal liability, which plaintiff voluntarily withdrew on September 11, 2018 and which the Court dismissed. (See Docket Entry Nos. 53 and 55). Any evidence pertaining to claims that previously have been dismissed should be barred as irrelevant to plaintiff's remaining claims. See Eng v. Blood, 04 Civ. 1146 (NAM) (GHL), 2008 U.S. Dist. LEXIS 54802, *9-11 (N.D.N.Y. July 17, 2008) (barring testimony or evidence on emotional

damages stemming from dismissed claim as not relevant to remaining claim). Moreover, any evidence or testimony regarding previously dismissed claims would be confusing and would mislead the jury. The only claim proceeding to trial is a federal claim of excessive force against defendants Martinez and Lutchman.

Here, plaintiff seeks to introduce documents regarding his arrest and prosecution including NYPD arrest paperwork, scratch sheets of arrest paperwork, as well as documents from the Kings Country District Attorney's Office. (See Joint Pretrial Order, Docket Entry No. 54, at Plaintiff's Proposed Trial Exhibit Nos. 3, 4, 5, 6, and 12; see also NYPD Arrest Report, annexed to the Declaration of Kaitlin Fitzgibbon in Support of Defendants' Motions *in Limine* dated December 7, 2018 (hereinafter "Fitzgibbon Decl."), as Exhibit "A"; Online Booking System Arrest Worksheet, annexed to the Fitzgibbon Decl. as Exhibit "B"; NYPD Complaint Report, annexed to the Fitzgibbon Decl. as Exhibit "C"; Complaint Report Worksheet, annexed to the Fitzgibbon Decl. as Exhibit "D"; and King's County District Attorney's Office Complaint Room Screening Sheet, annexed to the Fitzgibbon Decl. as Exhibit "E"). These proposed trial exhibits are evidence related to dismissed-claims, and should be precluded under Rules 401, 402, and 403 of the Federal Rules of Evidence. As plaintiff's arrest and prosecution are not at issue, any related evidence—such as the arrest report, criminal complaint report, and the King's County District Attorney's Screening Intake Form—is irrelevant to the remaining claim for excessive force. It serves no purpose other than allowing plaintiff's counsel to confuse, mislead and inflame the jury. The jury should be focused on whether the force employed during plaintiff's arrest was lawful. Allowing evidence or testimony on claims previously advanced by plaintiff that are subsequently dismissed would confuse the issues and could result in an unfair or

inconsistent verdict.  Accordingly, plaintiff should be barred from offering evidence at trial pertaining to claims which have previously been dismissed.

**POINT IX**

**PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING VIDEOS THAT DO NOT DEPICT THE EVENTS AT ISSUE**

Plaintiff seeks to introduce surveillance video footage from 102 Saratoga Avenue that was recorded on the date of his July 7, 2015 arrest.  (See Joint Pretrial Order, Docket Entry No. 54, at Plaintiff's Proposed Trial Exhibit 19; see also surveillance footage from NYC Fried Chicken, annexed to the Fitzgibbon Decl. as Exhibit "F").  The surveillance video footage plaintiff intends to introduce does not depict the force that is at issue in this case.  The video footage from 102 Saratoga Avenue depicts plaintiff and his brother at NYC Fried Chicken—the establishment owned by the complaining victim, Mr. Rahman—where the alleged armed robbery occurred prior to plaintiff's arrest.  Plaintiff was subsequently arrested by defendants Martinez and Lutchman inside a Bodega at 421 Bainbridge Street.  The force at issue in this trial was used at 421 Bainbridge Street, not 102 Saratoga Avenue, thus, the footage from 102 Saratoga Avenue is not relevant to plaintiff's sole claim of excessive force.

Moreover, plaintiff has listed Mr. Rahman, the complaining victim, as a witness he intends to call in support of his claim to "testify about the facts and circumstances leading up to and including the arrest of plaintiff."  (See Joint Pretrial Order, Docket Entry No. 54, at Plaintiff's Proposed Witnesses).  Because Mr. Rahman will testify to what happened during his encounter with plaintiff at 102 Saratoga Avenue which led to Mr. Rahman calling the police, surveillance footage of this encounter would be cumulative and a waste of time.  Moreover, since plaintiff's false arrest claim has already been dismissed it is not at issue in this case, thus, allowing plaintiff to admit this video would only serve to confuse the jury.  Thus, as the

surveillance video footage from 102 Saratoga Avenue is not relevant to plaintiff's sole excessive force claim, and the admission of the video would be cumulative and mislead the jury, the Court should preclude plaintiff from introducing or using this video at trial.

**POINT X**

**PLAINTIFF SHOULD BE PRELUDED FROM OFFERING HIS PROPOSED PHOTOGRAPH AS EVIDENCE OF PLAINTIFF'S INJURIES**

Plaintiff seeks to introduce a photograph of himself which was disclosed during discovery bearing Bates No. P50. (See Joint Pretrial Order, Docket Entry No. 54, at Plaintiff's Proposed Trial Exhibit 20; see also photograph of plaintiff bearing Bates No. P50, annexed to the Fitzgibbon Decl. as Exhibit "G"). This is a color photograph which appears to show part of plaintiff's body on the date of the incident with what appears to be blood on his shirt. Defendants assert that plaintiff should be precluded from introducing this photograph into evidence as it is not relevant because it does not even depict the body part at issue and therefore the only purpose would be to mislead the jury and to improperly elicit sympathy from, or inflame the passions of, the jury.

Rule 403 of the Federal Rules of Evidence states: "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The Advisory Committee Note to Rule 403 adds that evidence tending to "induce decision on a purely emotional basis" is properly excluded under this rule. As one court noted, "[p]hotographs of the victim bleeding profusely are classic examples of such evidence." Jackson v. Firestone Tire & Rubber Co., 788 F.2d 1070, 1085 (5th Cir. 1986).

Here, plaintiff's only alleged injuries are bruising to his back, and a laceration above his right eye. The photograph plaintiff seeks to offer as evidence only shows plaintiff from the front, and the photograph cuts off at plaintiff's eyes so you cannot see location of the laceration above his eye. What the photograph does depict instead is what appears to be blood on plaintiff's white shirt. This photo will in no way assist the jury in assessing plaintiff's alleged injuries and instead would impermissibly "induce decision on a purely emotional basis." <u>Jackson</u> at 1085. Moreover, accordingly to the JPTO, plaintiff will introduce medical records from Woodhull Hospital where plaintiff was treated on the night of the incident. The records clearly indicate that plaintiff sustained a "right orbital ridge laceration [status post] trauma" and further state that the injury was treated with "normal saline and Betadine solution. Laceration repair successfully [with] 5, 5-0 ethilon sutures." Defendants do not contest plaintiff's injuries as documented in the records and submit that these records speak for themselves. Because the medical records clearly indicate the injury plaintiff sustained to his face and the photograph plaintiff seeks to offer does not, the photograph should be precluded as it has no probative effect and would be highly prejudicial to defendants, mislead the jury and to improperly elicit sympathy from, or inflame the passions of, the jury.

### POINT XI

**PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING OR INTRODUCING EVIDENCE OF THE IAB AND CCRB <u>INVESTIGATIONS</u>**

Both the NYPD's Internal Affairs Bureau ("IAB") and the Civilian Complaint Review Board ("CCRB") conducted investigations regarding the use of force at issue in this case occurring on July 7, 2015. IAB found all allegations against defendants Martinez and Lutchman to be "Unsubstantiated," while CCRB substantiated one allegation of "Physical Force" against

defendant Martinez, and substantiated allegations of "Physical Force" and "Force with an Asp" against defendant Lutchman.  Defendants maintain that plaintiff should be entirely precluded from referencing or introducing any evidence of these investigations as it will only serve to prejudice, confuse and mislead the jury.  Knowledge of these investigations will not assist the trier of fact in determining whether it is more or less likely that defendants violated plaintiff's constitutional rights by using excessive force.  Moreover, once the jury is alerted to the fact that IAB and CCRB were involved in investigating the incident, they may conclude that plaintiff's allegations were significantly serious or meritorious.  Accordingly, reference to an IAB or CCRB investigation into this matter will only serve to prejudice defendants and confuse and mislead the jury.

Furthermore, plaintiff should be precluded from offering evidence of any findings or conclusions rendered by IAB or CCRB, as such evidence is inadmissible hearsay under Rule 801 and not subject to any exception.  Rule 801 of the Federal Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).  Any statements or conclusions by an investigator regarding the events of July 7, 2015 constitute hearsay as they are statements not made by a declarant at trial, and would be offered for the truth of those facts. Such statements do not fall into any of the hearsay exceptions permitted under Rule 803. Similarly, because neither IAB, CCRB, nor the City of New York are parties at trial any statement by an investigator is not an admission by a party opponent under Rule 801(d)(2).

Notwithstanding the above, it is defendants' position that any statements made to IAB or CCRB that have probative impeachment value should be allowed—subject to adherence with the

Federal Rules of Evidence, the Federal Rules of Civil Procedure, and if deemed admissible by the Court—and should be referred to simply as a "previous sworn statement given on [date]."

## POINT XII

### PLAINTIFF SHOULD BE PRECLUDED FROM CALLING THREE TREATING PHYSICIANS AS WITNESSES

Plaintiff indicated in his JPTO that he intends to call three doctors to testify at trial concerning plaintiff's injuries. However, he further indicated in the JPTO that he will introduce medical records from Woodhull Hospital and Interfaith Medical Center. These records speak for themselves. Indeed, defendants do not contest plaintiff's injuries as documented in the records. Any further testimony from the doctors would be needlessly cumulative, cause undue delay, and would waste time, and should therefore be excluded under Rule 403.

#### A. Dr. Anthony Gomez

Dr .Anthony Gomez treated plaintiff at Woodhull Hospital on the day of the incident. Dr. Gomez was the attending emergency room physician. Dr. Gomez documented his observations, diagnoses, and treatment of plaintiff in his reports in the Woodhull medical records. Since plaintiff intends to introduce these records into evidence, there is no need for additional, cumulative testimony from Dr. Gomez himself, which would waste time and cause undue delay.

#### B. Dr. Kathleen Edouard

Dr. Kathleen Edouard saw plaintiff several weeks after the incident, on July 28, 2015, for, *inter alia*, removal of his stitches. Dr. Edouard was the attending emergency room physician, and she also documented her observations, assessment, and treatment of plaintiff in the Interfaith Medical Center medical records. The records speak for themselves, and any additional testimony from her would be cumulative, waste time, and cause undue delay.

19

### C. Dr. Ping Lien

During discovery, Dr. Ping Lien was disclosed as part of plaintiff's initial disclosure as one of plaintiff's treating physicians at Interfaith Medical Center, however, that was not the case. Dr. Ping Lien is only listed in the Interfaith Medical Records as plaintiff's primary care physician. It is beyond dispute that where a party fails to provide information required by Fed. R. Civ. P. 26(a), the party is not allowed to use that information at a hearing or trial unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). If Dr. Lien did treat plaintiff for the injuries at issue here, not only should such evidence be precluded, but Dr. Lien's testimony should also be precluded, as discussed further in Point XII, *infra*, because Dr. Lien's information was not properly disclosed pursuant to Fed. R.Civ. P.26(a).

### POINT XIII

### PLAINTIFF SHOULD BE PRECLUDED FROM CALLING ANY WITNESS WHO WAS NOT PROPERLY DISCLOSED DURING DISCOVERY AT TRIAL

Plaintiff did not properly disclose Dr. Ping Lien, the King's County District Attorney's Office ("KCDA") ECAB Supervisor, the Interfaith Medical Center Records Clerk, the Woodhull Hospital Records Clerk, or the NYPD Communications Technician during discovery, and they should accordingly be precluded. A party who fails to disclose information pursuant to Rule 26 or fails to amend a previous response is not permitted to use such information as evidence, unless there is substantial justification provided for the failure and such failure is harmless. See Bynum v. Metro. Transp. Auth., 2006 U.S. Dist. LEXIS 98617, at *4-*5 (E.D.N.Y. 2006) (citing Fed. R. Civ. P. 37(c)(1)). In determining whether a witness should be precluded, the court should consider: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by

the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." See Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006). It is the plaintiff's burden to establish lack of prejudice, not defendants' burden. See Castro v. City of New York, 2009 U.S. Dist. LEXIS 69723, at *16 (E.D.N.Y. 2009).

It would be unduly prejudicial to allow these witnesses to testify at trial after plaintiff failed to disclose their names or contact information to defendants without any explanation in violation of Fed. R. Civ. P. 37(c)(1). For this reason alone, the KCDA ECAB Supervisor, the Interfaith Medical Center Records Clerk, the Woodhull Hospital Records Clerk, and the NYPD Communications Technician should be precluded because they were not disclosed during discovery, and they were not identified by name in the JPTO. With respect to Dr. Lien, in addition to the reasons set forth in Point XI, *supra*, Dr. Lien should be precluded because he was disclosed as a treating physician at Interfaith Medical Center, which was not the case. Dr. Lien's address and any role he may have had in treating plaintiff's injuries were never disclosed during discovery, and plaintiff did not testify at his deposition that he was treated by Dr. Lien at all. Allowing plaintiff to call any of these witnesses at trial would be an express violation of the underlying purpose of the pretrial disclosure requirements. Defendants would be prejudiced by the witnesses' appearance in the matter at this late stage, because defendants did not have the opportunity to depose them while discovery was still open.

Moreover, as for the records clerks from both Woodhull Hospital and Interfaith Medical Center, their testimony would waste time and cause undue delay as the parties exchanged certified copies of the medical records during discovery. With respect to the KCDA ECAB Supervisor, first, as explained in Point VIII, *supra*, defendants contend that the KCDA screening intake sheet should be precluded. However, should the Court allow plaintiff to introduce the

screening intake sheet into evidence, the testimony of the ECAB supervisor would be needlessly cumulative as the document speaks for itself, therefore, any testimony from this individual would be a waste time and serve to confuse the jury. Lastly, the testimony of the NYPD Communications Technician should be precluded because the parties have access to the audio recordings of the defendant officers' radio runs. Therefore, there is no need to call a witness to explain the contents of the SPRINT report, because the audio of the radio runs are the best evidence of what occurred, and such testimony would be cumulative, a waste of time, and confusing for the jury.

Accordingly, Dr. Ping Lien, the KCDA ECAB Supervisor, the Interfaith Medical Center Records Clerk, the Woodhull Hospital Records Clerk, and the NYPD Communications Technician should all be precluded from testifying at trial.

**POINT XIV**

**PLAINTIFF SHOULD BE PRECLUDED FROM ELICITING TESTIMONY OR INTRODUCING EVIDENCE OF THE DEFENDANT OFFICERS' RELATIONSHIP**

Plaintiff should be precluded from eliciting testimony or introducing evidence of the insinuation that defendants Martinez and Lutchman do not speak to one another because of this incident. At both defendants' depositions the officers testified that they are not in communication by virtue of the fact that their tours and assignments have changed since July 2015, therefore, they no longer work together. At these depositions plaintiff's counsel attempted to draw the improper conclusion that the defendants do not speak to each other because of the incident underlying this lawsuit. Any insinuation that this is the case is irrelevant, wildly improper and only serves to mislead the jury. Accordingly, plaintiff should be precluded from cross-examining the defendants with respect to their personal relationship with one another.

**PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE ABOUT HIS PRIOR LAWSUIT**

Prior to filing the Complaint in this case, plaintiff filed a lawsuit for a separate unrelated incident where he was arrested on April 23, 2014 and allegedly subjected to excessive force. That case proceeded to trial on plaintiff's excessive force claim on May 29, 2018. Defendants Martinez and Lutchman were not involved in that incident which took place over a year prior to the July 7, 2015 incident at issue in this case. The incident at issue here is completely unrelated to plaintiff's April 23, 2014 arrest and alleged excessive use of force. Thus, the lawsuit and any testimony regarding the prior incident or the civil trial for that case should be precluded under Rule 402 because it is not relevant.

Moreover, because plaintiff's civil case related to his April 23, 2014 arrest also involved allegations of excessive force, evidence concerning the other lawsuit would only confuse, mislead and inflame the jury, or constitute an improper attempt by plaintiff to garner sympathy. This could lead the jury to punish the defendants for unrelated allegations. Any mention of the other lawsuit or the unrelated April 23, 2014 incident should therefore also be excluded under Rule 403 since it lacks any substantial probative value here and is unfairly prejudicial to the defendants.

**POINT XVI**

**DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE RELEVANT PORTIONS OF PLAINTIFF'S CRIMINAL HISTORY**

Plaintiff was convicted by plea of fraudulent accosting, a misdemeanor, in violation of N.Y. Pen. Law 165.30 on November 2, 2009. Rule 609(a)(2) states that evidence of a criminal conviction "for any crime regardless of the punishment, . . . *must be admitted* if the court can

readily determine that establishing the elements of the crime required proving . . . a dishonest act or false statement." Fed. R. Evid. 609(a)(2) (emphasis added).  A person is guilty of Fraudulent Accosting "when he accosts a person in a public place with intent to defraud him of money or other property by means of a trick, swindle or confidence game."  <u>See</u> NY CLS Penal § 165.30.  Defendants submit that this offense, by definition, involves a dishonest act or false statement such that it must be admitted pursuant to FRE 609(a)(2).  <u>See</u> <u>Williams v McCarthy</u>, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, at *5-6 (S.D.N.Y. Oct. 25, 2007) (fraudulent accosting is a *crimen falsi* crime as defined by FRE 609(a)(2)); <u>Martin v AMTRAK</u>, 97 Civ. 8381 (RLE), 1998 U.S. Dist. LEXIS 13979, at *11-13 (S.D.N.Y. Sep. 3, 1998) (fraudulent accosting is a *crimen falsi* crime as defined by FRE 609(a)(2)).  Accordingly, defendants should be permitted to elicit on cross-examination that plaintiff has been convicted by plea of fraudulent accosting.

## POINT XVII

### DEFENDANTS RESERVE THEIR RIGHT TO FILE SUPPLEMENTAL MOTIONS *IN LIMINE*

Defendants respectfully reserve their right to object to any *in limine* motions submitted by plaintiff and to file supplemental motions *in limine*.

**CONCLUSION**

For the foregoing reasons, defendants Martinez and Lutchman respectfully request the

Court grant their motions *in limine*, together with such other and further relief as this Court may

deem just and proper.

Dated: New York, New York
   December 12, 2018

        ZACHARY W. CARTER
        Corporation Counsel of the City of New York
        *Attorney for Defendants Martinez and Lutchman*
        100 Church Street, 3rd Floor
        New York, New York 10007
        Tel: (212) 356-5057

        By:      /s/
            Kaitlin Fitzgibbon
            *Assistant Corporation Counsel*

cc:  **VIA ECF AND FIRST CLASS MAIL**
   Amy Rameau, Esq.
   The Rameau Law Firm
   16 Court Street
   Suite 2504
   Brooklyn, NY 11241

   Michael Lumer, Esq.
   Lumer law Group
   225 Broadway Suite 2700
   New York, NY 10007