UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THOMAS JENNINGS,

               Plaintiff,

      -against-                **17 CV 3172 (LDH) (PK)**

PEARCE MARTINEZ, et al.,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE

<u>Attorneys for Plaintiff</u>

Amy Rameau, Esq.
THE RAMEAU LAW FIRM
16 Court Street, Suite 2504
Brooklyn, New York 11241
(718) 852-4759

Michael Lumer, Esq.
LUMER LAW GROUP
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES. ................................................................................................ iv

ARGUMENT. ........................................................................................................................ 1

POINT I     DEFENDANTS SHOULD BE PRECLUDED FROM
            SUGGESTING THAT (i) THE CITY WILL NOT
            INDEMNIFY THE DEFENDANTS, AND (ii)
            DEFENSE ATTORNEYS ARE NOT "CITY
            ATTORNEYS". ........................................................................... 1

POINT II    THE PROPOSED AMENDMENT OF THE
            CAPTION OF THE ACTION IS UNOPPOSED. .............................. 2

POINT III   THE COURT SHOULD PERMIT PLAINTIFF TO
            SUGGEST A DOLLAR AMOUNT TO THE JURY
            OR DEFER THE DECISION UNTIL TRIAL. ................................... 2

POINT IV    THE DEFENDANTS' DISCIPLINARY HISTORY
            AND OTHER LAWSUITS. ......................................................... 3

POINT V     PLAINTIFF SHOULD NOT BE PRESUMPTIVELY
            BARRED FROM USING UNSPECIFIED TERMS
            AND SHOULD BE PERMITTED TO ENGAGE IN
            REASONABLE ARGUMENT. ..................................................... 4

POINT VI    PLAINTIFF SHOULD BE PERMITTED TO
            INTRODUCE PROVISIONS OF THE PATROL
            GUIDE. ..................................................................................... 5

POINT VII   PLAINTIFF SHOULD NOT BE PRECLUDED
            FROM ARGUING THAT THE DEFENDANTS
            USED EXCESSIVE FORCE OR MORE FORCE
            THAN WHAT WAS OBJECTIVELY REASONABLE. ...................... 7

POINT VIII  PLAINTIFF SHOULD BE PERMITTED TO INTRODUCE
            ARREST PAPERWORK THAT ESTABLISHES THAT THE
            DEFENDANTS LIED ABOUT THEIR USE OF FORCE
            AGAINST PLAINTIFF AND TO INTRODUCE THE
            VIDEO OF THE UNDERLYING "KNIFE POINT
            ROBBERY". ............................................................................... 9

   A.  The Video Evidence. ........................................................ 10

   B.  The Arrest Paperwork. ................................................. 12

POINT IX PLAINTIFF SHOULD NOT BE BARRED FROM
     SHOWING THE JURY PHOTOGRAPHS THAT
     DEPICT HIS INJURIES. .......................................................... 13

POINT X  PLAINTIFF SHOULD NOT BE BARRED FROM
     INTRODUCING THAT THE CCRB
     SUBSTANTIATED THE CLAIM THAT
     DEFENDANTS USED EXCESSIVE FORCE. .................................. 15

POINT XI PLAINTIFF SHOULD NOT BE BARRED FROM
     CALLING THREE TREATING PHYSICIANS. ............................... 16

POINT XII PLAINTIFF SHOULD NOT BE BARRED FROM
     CALLING WITNESSES FROM THE KCDA, THE
     NYPD, OR THE HOSPITALS WHERE PLAINTIFF
     TREATED. ................................................................. ........... 17

POINT XIII EVIDENCE THAT MARTINEZ STOPPED
     SPEAKING WITH LUTCHMAN AFTER THE
     INCIDENT IS RELEVANT. ................................................. 20

POINT XIV PLAINTIFF'S PRIOR LAWSUIT AND VERDICT IN
     JENNINGS V. YURKIW, 14 CV 6377 (SMG)................................... 21

POINT XV DEFENDANTS SHOULD BE PRECLUDED FROM
     INTRODUCING EVIDENCE OF PLAINTIFF'S
     2009 MISDEMEANOR CONVICTION. ............................................ 21

CONCLUSION. .................................................................. ........................................ 24

## TABLE OF AUTHORITIES

**Cases**                                                                                                                      **Page**

*Ali v. Connick*,
2016 WL 3002403 (E.D.N.Y. May 23, 2016). ............................................................... 14

*Anderson v. Aparicio*,
25 F.Supp. 3d 303 (E.D.N.Y. 2014). ......................................................................... 1

*Cerbelli v. City of New York*,
2008 WL 4449634 (E.D.N.Y. Sept. 8, 2008),
aff'd without objection,
2008 WL 4449634, at *1 (E.D.N.Y. Oct.1, 2008)......................................................... 5

*Collado v. City of New York*,
2017 WL 4533772 (S.D.N.Y. Sept. 27, 2017).............................................................. 6

*Edwards v. City of New York*,
2011 WL 2748665 (E.D.N.Y. July 13, 2011). .............................................................. 2

*Graham v. Connor*,
490 U.S. 386 (1989))................................................................................................. 8

*Henderson v. City of New York*,
571 F. App'x 42 (2d Cir. 2014) . ................................................... ................. 7

*Ismail v Cohen*,
899 F.2d 183 (2d Cir. 1990). ...................................................................................... 16

Jennings V. Yurkiw,
14 CV 6377 (SMG). ................................................................................................... 21

*Jimenez v. City of Chicago*,
732 F.3d 710 (7th Cir. 2013)...................................................................................... 5

*John v. City of New York*,
2017 WL 976934 (E.D.N.Y. Mar. 13, 2017)................................................................ 8

*Lemmo v. McKoy*,
2011 WL 843974 (E.D.N.Y. Mar. 8, 2011).................................................................. 8

*Lightfoot v. Union Carbide Corp.*,
110 F.3d 898 (2d Cir. 1997). .......................................................................... 2

*Lubecki v. City of New York*,
304 A.D.2d 224, 758 N.Y.S.2d 610 (App. Div. 2003)................................. 5

*Nnodimele v. Derienzo*,
2016 WL 3561708 (E.D.N.Y. June 27, 2016)......................................... 5, 6

*Smith v. City of New York*,
2015 WL 4643125 (S.D.N.Y. Aug. 5, 2015). ............................................. 5

*Tardif v. City of New York*,
2017 WL 3634612 (S.D.N.Y. Aug. 23, 2017). ........................................... 6

*Tracy v. Freshwater*,
623 F.3d 90 (2d Cir. 2010). .......................................................................... 8

*United States v. Abu-Jihaad*,
630 F.3d 102 (2d Cir. 2010). ..................................................................... 14

*United States v. Al-Moayad*,
545 F.3d 139 (2d Cir. 2008). ..................................................................... 14

*United States v. Edwards*,
342 F.3d 168 (2d Cir. 2003). ..................................................................... 16

*United States v. White*,
692 F.3d 235 (2d Cir. 2012). ..................................................................... 14

Federal Rules

Fed. R. Evid. 401........................................................................................ 14, 21
Fed. R. Evid. 402..................................................................................... 3, 14, 21
Fed. R. Evid. 403............................................................................. 3, 14, 15, 23
Fed. R. Evid. 404(b), ....................................................................................... 16
Fed. R. Evid. 609(a)(2)............................................................................... 22, 23

State Statutes

N.Y. Penal Law §165.30(1). ............................................................................ 22
New York Penal Law  § 165.30(2). ................................................................. 22

## ARGUMENT

## POINT I

## DEFENDANTS SHOULD BE PRECLUDED FROM SUGGESTING THAT (i) THE CITY WILL NOT INDEMNIFY THE DEFENDANTS, AND (ii) DEFENSE ATTORNEYS ARE NOT "CITY ATTORNEYS"

The defendants' request that plaintiff not tell the jury that the City of New York may (as it virtually always does) indemnify defendants Martinez and Lutchman is unnecessary as plaintiff has no intention of introducing or alluding to the issue of indemnification. However, this position is undertaken with the express understanding that the defendants will not themselves raise the issue by suggesting or implying that either Martinez or Lutchman might not be fully indemnified by the City, or otherwise implying that either defendant may have to individually bear the burden of any verdict that issues. Put simply, all of the parties should remain silent with respect to the question of indemnification. Allowing the defendants to do otherwise would mislead the jury and be profoundly unfair to plaintiff. *Anderson v. Aparicio*, 25 F.Supp. 3d 303, 314 (E.D.N.Y. 2014)("The law is clear that a defendant may 'open the door' to admission of an indemnity agreement by introducing evidence of financial constraint.").

The request by the City's lawyers that they not be called "City attorneys" is a mildly absurd non-issue. As a preliminary matter, at the outset of *voir dire* the Court ought to identify defense counsel as employees of the New York City Law Department because (a) it is true, and (b) necessary to ensure that any connections between the prospective jurors and counsel are revealed. To be clear, plaintiff has no intention of underscoring that defense

counsel are attorneys employed by the City of New York, although it is not clear that an inference that the City may be paying the cost of a plaintiff's verdict would be prejudicial to the defendants, as the jury may well be more hesitant to award damages if it believes the money is coming from their own pockets as taxpayers. In any event, plaintiff does not intend to focus on counsel's title and has no intention of deliberately referring to defense counsel as "City attorneys." However, the argument that plaintiffs should be formally precluded from doing so, or risk violating a court order should counsel inadvertently err is groundless.

## POINT II

### THE PROPOSED AMENDMENT OF THE CAPTION OF THE ACTION IS UNOPPOSED

Plaintiff has no objection to amending the caption to remove any reference to the City of New York or any John Doe individuals to the extent that the caption has not already been so amended.

## POINT III

### THE COURT SHOULD PERMIT PLAINTIFF TO SUGGEST A DOLLAR AMOUNT TO THE JURY OR DEFER THE DECISION UNTIL TRIAL

The Second Circuit has long since rejected a *per se* prohibition on counsel suggesting a specific sum of damages. *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997). While such a practice is disfavored, the district courts retain the discretion as to whether to allow counsel to reference specific figures or give cautionary instructions should they allow the parties to discuss concrete numbers. *Id.*; *Edwards v. City of New York*, 2011 WL 2748665, at *2 (E.D.N.Y. July 13, 2011) (allowing counsel to suggest a dollar figure but

instructing the jury that such a recommendation is neither evidence nor the law).

At this pretrial stage of the proceedings, plaintiff asks that the Court either grant him the right to suggest a figure to the jury, or at a minimum, defer ruling until the trial is underway. How the Court ought to exercise its discretion with respect to this question would be better resolved after the Court has heard the evidence and the issues before the jury are more clearly and concretely established. At that point, the Court will have the benefit of an actual record upon which it can rely in deciding whether to permit or preclude plaintiff from suggesting a specific dollar amount or range during closing arguments.

## POINT IV

### THE DEFENDANTS' DISCIPLINARY HISTORY AND OTHER LAWSUITS

Plaintiff does not intend to introduce evidence of other misconduct by the defendants, or reference unrelated CCRB and IAB investigations and civil lawsuits. The plaintiff has moved *in limine* to preclude defendants from introducing evidence of plaintiff's criminal history, or otherwise limit the information that can be admitted because, in part, a Rule 402/403 balancing test favors the preclusion of such collateral information whose admission would be prejudicial and confusing for a jury. It is plaintiff's preference that the jury decide this case based on the evidence related to the facts and circumstances surrounding the defendants' use of force against plaintiff; not collateral character attacks.

Notwithstanding the above, neither Martinez, Lutchman, nor any other NYPD witnesses should be permitted to introduce commendations, promotions, and other evidence designed to amplify their positive history or good character. Any claims or

insinuations by defendants as to their prior professional achievements and good citizenship would open the door to evidence of prior wrongdoing to ensure that the jury is not otherwise misled.

**POINT V**

**PLAINTIFF SHOULD NOT BE PRESUMPTIVELY BARRED FROM USING UNSPECIFIED TERMS AND SHOULD BE PERMITTED TO ENGAGE IN REASONABLE ARGUMENT**

Defendants' request that plaintiff be barred from "referring to unrelated purported instances of police misconduct, class actions and criminal investigations" (Defs. Brief at 9) is nonsensical and somewhat akin to moving to preclude a party "from asking improper questions." Plaintiff has no intention of referencing other police misconduct, class actions such as those involving stop and frisks or other litigation, or suggesting in any way that excessive uses of force by other officers on other occasions has anything to do with the disputed facts in this case. Having said that, defendants attempt to transition from this not unreasonable, albeit unnecessary, request to a bar on specific terms such as "testilying" and "blue wall of silence" is not proper, at least at this pre-trial stage of the proceeding. If there are specific terms defendants believe are improper in the context of the case, the objection should be raised at that time or prior to the questioning of the witness or presentation of the closing argument.

## POINT VI

**PLAINTIFF SHOULD BE PERMITTED TO
INTRODUCE PROVISIONS OF THE PATROL GUIDE**

Plaintiff has no intention of arguing to the jury that any violation of the NYPD's Patrol Guide necessarily translates to a constitutional violation. However, plaintiff should be permitted to question Martinez, Lutchman, and other NYPD witnesses as to the Patrol Guide's rules and procedures concerning the use of force and governing the proper documentation of officers' activities and arrests, and, obviously, that officers not lie to supervisors about the facts and circumstances surrounding arrests. This is entirely appropriate, as the "Patrol Guide has frequently been accepted as evidence of the standard of care to be exercised by a police officer." *Smith v. City of New York*, 2015 WL 4643125, at *3 (S.D.N.Y. Aug. 5, 2015) (citing *Cerbelli v. City of New York*, 2008 WL 4449634, at *1–25 (E.D.N.Y. Sept. 8, 2008), aff'd without objection, 2008 WL 4449634, at *1 (E.D.N.Y. Oct.1, 2008); *Lubecki v. City of New York*, 304 A.D.2d 224, 234-35, 758 N.Y.S.2d 610, 618 (App. Div. 2003)); *see also*, *Nnodimele v. Derienzo*, 2016 WL 3561708, at *14 (E.D.N.Y. June 27, 2016) (permitting plaintiff to introduce evidence concerning the Patrol Guide at trial because "[i]n constitutional tort cases, expert testimony regarding sound professional standards governing a defendant's actions can be relevant and helpful." (quoting *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013))).

Here, two fundamental, intertwining questions for the jury are what force was actually used by the defendants and if that force was objectively reasonable used. Implicitly at issue in these queries is whether either defendant is lying about the surrounding facts and

circumstances. As the Hon. Allyne R. Ross ruled in *Nnodimele*, the Patrol Guide is indeed a relevant and probative source of information for a jury in these circumstances. *See also,* *Collado v. City of New York*, 2017 WL 4533772, at *3 (S.D.N.Y. Sept. 27, 2017) ("Although a violation of the Patrol Guide is not necessarily a violation of constitutional rights just as a violation of constitutional rights is not necessarily a violation of the Patrol Guide, the Patrol Guide is relevant for the same reasons as evidence of lesser degrees of force Connolly could have used. It is relevant in determining how a reasonable officer might comport himself under the circumstances." (Collecting cases)); *Tardif v. City of New York*, 2017 WL 3634612, at *6 (S.D.N.Y. Aug. 23, 2017) ("Whether the officers violated the NYPD Patrol Guide remains a significant factor to be considered in ultimately determining whether the officers' actions that day were reasonable and subject to qualified immunity."). While violations of the Patrol Guide are not necessarily proof of a constitutional violation, the defendants' compliance or non-compliance with the Patrol Guide is a relevant factual inquiry at trial.

Moreover, there is ample evidence that the defendants affirmatively lied to Sgt. Steven Van Soest at the precinct shortly after the arrest when they denied using force against plaintiff. This denial is echoed in both the arrest paperwork created by Martinez and both defendants' memo book entries, which all deny that force was employed. Plaintiff expects to show that this testimony is entirely false, and that the defendants were silent when called upon to acknowledge their conduct, or worse, they lied outright when asked. That these deliberate fabrications and misstatements were in violation of the Patrol Guide does not resolve the constitutionality of their conduct, it is evidence of a guilty conscience and the

defendants' own belief and understanding that their conduct was so improper as to warrant a deliberate violation of the NYPD's Patrol Gide. In examining these witnesses, plaintiff should be able to inquire into whether the witnesses' claimed conduct would comport or conflict with NYPD rules and regulations. Such testimony would provide a jury with a reasonable basis to credit or reject such claims by the witnesses. Whether the defendant or defense witnesses were acting in compliance with departmental guidelines are factors which the jury should be permitted to consider in determining the veracity of the officers and the reasonableness of their actions. *Henderson v. City of New York*, 571 F. App'x 42 (2d Cir. 2014) (non-compliance with Patrol Guide a basis for jury to conclude defendants had retaliated against plaintiff in employment action). Accordingly, plaintiff should be permitted to reference the Patrol Guide's relevant rules and regulations governing police conduct at trial.

**POINT VII**

**PLAINTIFF SHOULD NOT BE PRECLUDED FROM ARGUING THAT THE DEFENDANTS USED EXCESSIVE FORCE OR MORE FORCE THAN WHAT WAS OBJECTIVELY REASONABLE**

Defendants' argument here is pure sophistry. Plaintiff does not dispute that the fact that an officer could have used less force does not necessarily, in terms of strict liability, render the actual force employed excessive. However, the jury will be asked to resolve (a) what force was used by the defendants, and (b) whether it was objectively reasonable. The defendants' claim that plaintiff cannot argue that the officers should have used less force (or no force) because the ability to use less force would not be dispositive is facially absurd. Put simply, in a case where plaintiff is alleging that the defendants used

"excessive" force, plaintiff cannot be precluded from arguing that the force the defendants used was objectively excessive.

As this Court has previously observed, "[i]t is long settled that the Fourth Amendment protects people from the use of excessive force during an arrest." *John v. City of New York*, 2017 WL 976934, at *2 (E.D.N.Y. Mar. 13, 2017) (citing *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (noting that use of force that is unreasonable is "therefore excessive") and *Lemmo v. McKoy*, 2011 WL 843974, at *4 (E.D.N.Y. Mar. 8, 2011) (explaining that excessive force claim for conduct alleged to have occurred during an arrest is governed by Fourth Amendment standard)). "In assessing a claim brought for excessive force, the question is whether the force was objectively reasonable under the circumstances." *Id.* (citing *Lemmo*, 2011 WL 843974, at *4 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989))).

Here, the jury will have the benefit of video footage depicting defendants' use of force against plaintiff, meaning whether force was used is less of an issue than the reasonableness of that force. It is ridiculous to suggest that the plaintiff cannot argue that it was unreasonable for the defendants to choose to punch him, strike him repeatedly with an asp, and slam his face into a store counter, as depicted in the video. The Court may charge the jury that the mere fact that defendants had lesser degrees of force available to them does not mean that the force they used was excessive, as a matter of law. However, whether the defendants should have used less force is the very question before the jury and plaintiff should not, indeed, cannot, be precluded from arguing that defendants chose to use force that was objectively unreasonable and must be held accountable for their conduct.

**POINT VIII**

**PLAINTIFF SHOULD BE PERMITTED TO
INTRODUCE ARREST PAPERWORK THAT
ESTABLISHES THAT THE DEFENDANTS LIED
ABOUT THEIR USE OF FORCE AGAINST
PLAINTIFF AND TO INTRODUCE THE VIDEO OF
THE UNDERLYING "KNIFE POINT ROBBERY"**

The defendants seek to preclude plaintiff from introducing (i) testimonial and documentary evidence relating to his arrest, and (ii) a video of the alleged knife point robbery for which plaintiff was arrested, on the grounds that the sole cause of action is for excessive force and thus this evidence is irrelevant or confusing. (Points VIII and IX, Defs. Brief 13-16). This specious argument is highly misleading and designed to preclude evidence that is essential to an honest presentation of the case and defendants' deliberate lies and fabrications concerning their use of force.

Plaintiff agrees that the only remaining cause of action is his force claim against the two individual defendants. In that regard it is important to note that it is undisputed that plaintiff was arrested by the defendants inside a bodega after a pizza shop owner told the defendants that plaintiff and another man had robbed the store at knife point and fled on foot. It is also agreed that the defendants canvassed the neighborhood and eventually came upon plaintiff. At the same time, plaintiff has always denied any sort of robbery or criminal conduct in the pizzeria, and further denied running from the officers.

The jury's resolution of these factual disputes is essential as the jury will necessarily be concluding either plaintiff or the defendants are lying about the fundamental facts leading up to the use of force. This is critical to the jury's evaluation of the parties'

9

credibility, which in turn will help provide a basis for concluding that the defendants fabricated a fiction after the arrest and realization that plaintiff was injured (but before they were aware of the video) to justify their use of force.

Equally important, the jury will hear repeatedly from the defendants that plaintiff participated in a knife point robbery immediately before the arrest. This is obviously highly prejudicial to the plaintiff. That there is video evidence that no such event ever happened is essential to counter the devastating harm flowing from the false depiction of plaintiff as a man who would rob people at knife point. Moreover, whether plaintiff had engaged in a violent crime moments before encountering the defendants, or had not, and was blissfully unaware of the false allegations made against him, is highly probative of his state of mind and whether he did or did not flee from the defendants and otherwise behave like a cornered criminal.

## A.    The Video Evidence

The relevant video footage is from several cameras at the pizzeria and concerns the period of time from when plaintiff enters the pizzeria until his departure, a period of time that begins at the 0:40 mark on the camera stationed behind the counter, and ends less than seven minutes later, at 7:25. The video is relatively clear. There is no audio.

While the video appears to show plaintiff engaged in some sort of argument with a person behind the counter, it also shows that the plaintiff paid for the pizza that he was handed. At no point in the video does plaintiff, or the person he was with, act violently or menacingly in any way. Neither plaintiff nor the other person displayed or mimicked the

possession of a weapon. There is simply no basis to conclude from the video that plaintiff engaged in any criminality at the pizzeria.

In view of the certainty that defendants will testify they were told that plaintiff and the other person had just robbed the pizzeria at knife point, basic fairness dictates that the jury be made aware that this did not happen. Instructing the jury that the charges were later dismissed is woefully inadequate to address the prejudice that will flow from defendants' testimony about the alleged robbery.

More to the point, both parties agree that whether the robbery occurred is not directly relevant to the reasonableness of the force that was used. However, the officers will contend that their understanding that it had happened informed their choices and conduct. It is equally necessary that the jury be aware that crime never happened in order to evaluate plaintiff's state of mind and otherwise resolve the sharply disputed facts about whether plaintiff had any interactions with the defendants before entering the bodega, and if so, what they were. Whether plaintiff was innocently walking down the block or knowingly fleeing to avoid arrest for committing a violent crime is inextricably intertwined with the factual issues that the jury must determine in order to resolve the excessive force claim.

Allowing this video into evidence will provide the jury with much-needed context. It will not add appreciably to the length of the trial, given the brevity of the footage, and any confusion can **be** readily cured with a simple instruction (which the defendants will undoubtedly be asking the Court to give anyway) to the effect that the ultimate disposition of the criminal prosecution is irrelevant to the question before the jury. The fact that the store

owner, Mr. Rahman, is available, is irrelevant. Indeed, his testimony on the "crime" at the pizzeria would only further necessitate the need for the video evidence. If the jury is to reach an honest verdict predicated on a complete understanding of the facts of the case, this video footage must be admitted.

## B.       The Arrest Paperwork

The arrest paperwork contains defendants outright denials of any use of force and is *prima facie* evidence of defendants' intent to cover up their misconduct. For instance, Martinez expressly stated in the Arrest Report that no force was used against plaintiff to effectuate the arrest. (Defendants' Exhibit A, at DEF 10). This was obviously untrue. At his deposition, Martinez says this was just an entry error on his part. However, in the handwritten scratch report initially drafted by Martinez, he also noted that no force was used, checking off the "NO" box on the left hand side of the middle of the page. (Defendants' Exhibit B, at DEF 24). While perhaps his repeated entries were a simple mistake, a jury could rely on these entries as evidence of an attempt by Martinez to cover up the defendants' use of force, which is precisely the sort of conduct one engages in when one knows his underlying behavior was wrong.

Similarly, in the scratch and final Complaint Reports, (Defendants' Exhibits C and D), Martinez wrote in the narrative section that plaintiff "intentionally resisted arrest." This, plaintiff respectfully suggests, is another fiction that is unsupported by the video, and is further evidence of defendants' efforts to cover up their use of force.

That defendants were seeking to hide this use of force is reflected in the

outright lie they told the desk officer, Sgt. Van Soest, after they arrived at the precinct. Van

Soest told IAB investigators that he noticed plaintiff was bleeding and asked the defendants

what happened. They explained, Van Soest told IAB, that they placed plaintiff against the

wall during his arrest and the facial injury must have occurred then. They made no mention

of any use of force. At his deposition, Martinez swore that he expressly told Van Soest that

he punched plaintiff. Van Soest denied this at his deposition, and these arrest documents

make clear that Van Soest's recollection is the more reliable one, as each document reflects a

deliberate attempt to deny any use of force.

Thus, these documents – included defendants' Exhibit E, which contains

statements to prosecutors by the defendants that are inconsistent with the facts in this case

and the defendants' deposition testimony – establish that defendants sought to hide their

conduct from their fellow officers and supervisors, and that Martinez went so far as to sign

off on materially false and misleading police documentation, and lie to a supervising officer.

To the extent that there is any risk of confusion in terms of the validity of the arrest and

prosecution, plaintiff notes again that the jury will surely be told both that the charges were

eventually dismissed but that the legality of the arrest and prosecution are not at issue.

## POINT IX

### PLAINTIFF SHOULD NOT BE BARRED FROM SHOWING THE JURY PHOTOGRAPHS THAT DEPICT HIS INJURIES

The defendants' motion to preclude the use of a photograph of plaintiff taken

on the day of the arrest is without merit and should be denied. The photograph in question,

while admittedly imperfect, depicts plaintiff after the arrest and thus is relevant as to his appearance that day. That his shirt is stained with blood is relevant to the nature of his injuries and the defendants' awareness of these his injuries. As defendants themselves note, the wound itself is not visible in the photograph, and thus the exhibit lacks any goriness or gratuitous detailing. There is simply nothing about the photograph that is unduly distressing or inflammatory.

As a general matter, "unless an exception applies, all '[r]elevant evidence is admissible." *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quoting Fed. R. Evid. 402). Moreover, Fed. R. Evid. 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The Second Circuit has characterized this relevance standard as 'very low.'" *Ali v. Connick*, 2016 WL 3002403, at *2 (E.D.N.Y. May 23, 2016) (quoting *White*, 692 F.3d at 246 (quoting *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008))). Notably, "[t]o be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt." *Id.* (quoting *United States v. Abu-Jihaad*, 630 F.3d 102, 132 (2d Cir. 2010)). Here, the photograph is relevant to plaintiff's appearance on the day of the arrest, after his encounter with the defendants. While the weight of this exhibit is debatable, that it is relevant cannot be seriously disputed.

By the plain language of Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:

unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, the photograph will not

mislead or confuse jurors as to plaintiff's appearance, it is not a posed photograph meant to

unfairly or inaccurately depict plaintiff, nor is there any basis for defendants' argument that

the jury would be so moved by the photograph as to assign it an unfair or impermissible

value and weight. The photograph should be admitted.

**POINT X**

**PLAINTIFF SHOULD NOT BE BARRED FROM
INTRODUCING THAT THE CCRB
SUBSTANTIATED THE CLAIM THAT
DEFENDANTS USED EXCESSIVE FORCE**

The defendants have recently advised that the CCRB substantiated a

complaint by someone other than plaintiff that Martinez and Lutchman used excessive force

against plaintiff and that Lutchman did so with an asp. They recommended in August 2018

that charges be brought by the NYPD. Defendants have advised that no such charges were

brought. Unfortunately, to date, defendants have not produced any NYPD documents or

materials addressing CCRB's recommendation that charges be pursued.

Defendants now seek to preclude these findings on what appear to be Rule

403 grounds, claiming that this evidence will "prejudice, confuse and mislead the jury."

(Defs. Brief at 18). They further contend that the findings would be hearsay and violate Rule

801. These arguments are insufficient to warrant preclusion.

Here, there is evidence in the CCRB file that was only just produced by

defendants on December 5, 2018, which was well after the JPTO had been filed and

endorsed by the Court. The investigation reflects CCRB's concern that the defendants' statements to CCRB were inconsistent with the video evidence.

It is well settled that the "Second Circuit has adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate propensity." *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003); *see also*, *Ismail v Cohen*, 899 F.2d 183 (2d Cir. 1990). In this case, the defendants' misleading and false statements to CCRB are evidence that defendants' conduct was not a mistake nor was it accidental, but was rather an intentional act which defendants sought to cover up by lying and dissembling, both to other officers and to investigators.

The CCRB's findings are not hearsay, any more than a criminal or civil judgment. They are truthful statements, which is to say, the CCRB found that these allegations were substantiated. To the extent that the defendants gave statements to the CCRB, these are plainly party admissions and are also not hearsay. Moreover, to the extent that they are the defendants' statements, they may be offered as proof that the defendants made the claim, not the truth of their claims to the CCRB. Plaintiff should therefore be permitted to inquire into the CCRB's investigation and finding.

## POINT XI

### PLAINTIFF SHOULD NOT BE BARRED FROM CALLING THREE TREATING PHYSICIANS

Plaintiff's identification of Ping Lien, MD, was in error, and plaintiff agrees that he will not call Dr. Lien. However, defendants do not dispute that plaintiff properly

16

identified medical doctors Anthony Gomez and Kathleen Edouard during discovery as two

of his treating physicians. The defendants further concede that Dr. Gomez treated plaintiff at

Woodhull Medical Center on the day of arrest for the injuries caused by the defendants, and

that plaintiff was treated by Dr. Edouard during a follow up visit for, in part, the removal of

his stitches. (Defs. Brief at 19). Their testimony concerning their observations of plaintiff,

the treatment rendered, and the records created concerning this treatment are plainly relevant

and admissible. The idea that the testimony would be cumulative or unnecessary is without

merit. Indeed, the doctors' testimony would provide jurors with a clear and easy to grasp

understanding of plaintiff's medical condition at the time and the treatment that was

provided, without asking the jury to interpret technical medical records that were crafted by

medical professionals for use by other medical professionals. There is no reason to believe

either treating physician's testimony would be particularly lengthy or time consuming, and

there is no good to preclude the jury from hearing this illuminating testimony.

## POINT XII

### PLAINTIFF SHOULD NOT BE BARRED FROM CALLING WITNESSES FROM THE KCDA, THE NYPD, OR THE HOSPITALS WHERE PLAINTIFF TREATED

The defendants substantively misconstrue the purpose plaintiff's identification

of witnesses from the Kings County District Attorney's Office ("KCDA"), the NYPD, and

Interfaith and Woodhull Medical Centers.

As an initial matter, the medical records clerks would be called as witnesses for

the sole purpose of authenticating plaintiff's medical records. Plaintiff trusts that this will not

be necessary, as he is unaware of any disputes concerning these documents. However, the defendants have long since been on notice that plaintiff treated at Interfaith and Woodhull, and have long since been in possession of his medical records. Calling witnesses for the sole purpose of authentication is not predicated on a prior disclosure of these individuals by name, or even by title. The defendants knew plaintiff would be seeking to use at least portions of these records, and there is no basis to preclude him from doing so if the defendants will not otherwise agree such authentication is unnecessary.

As for the KCDA and NYPD witnesses, it is important to note that it was the defendants who produced records from these two agencies and there is nothing surprising, unusual, or unexpected about plaintiff's intent to use the records. With respect to the former, plaintiff intends merely to call an appropriate person from the KCDA (who is usually selected by the KCDA in response to a trial subpoena, and is not hand selected by the plaintiff) to explain what the screening sheet is and lay the foundation for its introduction as a business record. Plaintiff is not seeking to call a witness with any personal knowledge of this case or the facts set out in the document or any relationship to any of the parties.

With respect to the NYPD Communications Technician, it is again important to note that it was the defendants who provided the audio recording of the radio run, a copy of which is attached to the accompanying Declaration of Michael Lumer, as plaintiff's Exhibit 1, and the Sprint Report, which is attached as Exhibit 2. The defendants have identified the radio run as their Exhibit B and presumably intend to play it for the jury. Plaintiff respectfully suggests that neither the recording nor the Spring Report make any

sense without guidance from a person with knowledge; in this case, a communications technician from the NYPD. This witness would have no personal knowledge of the facts of this case or the substance contained in the audio and written materials. Rather, the witness's sole purpose is to translate the materials produced by the defendants into plain English for the benefit of the jurors. Given that the substance of the testimony will concern the defendants' own communications as produced by the defendants themselves, defendants' belief that plaintiff was required to identify the unknown and unidentified NYPD communications technician in discovery makes no sense and has no application.

These records are important – particularly since the defendants also intend to introduce the audio file (defendants' Exhibit B). Defendant Lutchman has testified at his deposition and elsewhere to having made a vast assortment of calls over the radio requesting additional officers and giving out his constantly changing location during his supposed pursuit of the plaintiff prior to his arrest of plaintiff in the bodega. As the events leading up to the parties' arrival at the bodega are in sharp dispute, it is essential that the jury have a clear understanding as to what was transmitted and the chronology of the broadcasts. That plaintiff did not name the then-municipal defendant's employee in his discovery production has no bearing on this issue and is not a basis for preclusion.

## POINT XIII

### EVIDENCE THAT MARTINEZ STOPPED SPEAKING WITH LUTCHMAN AFTER THE INCIDENT IS RELEVANT

The defendants were partnered together at the time of the arrest. Shortly after

video evidence of the defendants' use of force against plaintiff surfaced and became publicly known, both through news broadcasts and circulation on the internet. Both officers were then placed on modified duty. When questioned at his deposition about his relationship with Martinez, Lutchman testified that he and Martinez had been friends and on good terms. However, now, "sadly–sadly, we don't speak to each other." He further testified that they "went their separate ways" and that "[he believes] it had something to do with [Martinez and Lutchman] getting modified because of this." According to Lutchman, he and Martinez see each other at the station house, but do not speak. Martinez denies that this is so, saying only that he and Lutchman rarely see each other. He cannot account for Lutchman's belief that Martinez stopped speaking to him after the defendants were placed on modified duty. The defendants argue plaintiff should be precluded from making any "insinuation" that, in fact, there is a connection between the end of the defendants' communication and the events at issue. This suggestion did not originate with plaintiff, it is Lutchman's own testimony.

That Martinez would stop speaking to Lutchman after the officers were placed on modified duty (and after an investigation was opened into the defendants' conduct), is relevant to Martinez's view of Lutchman's conduct in this matter, both in terms of the plaintiff's arrest, and any statements Lutchman did, or did not, make to investigators. The relationship between the officers, while not the centerpiece of the trial, is obviously relevant and therefore admissible under Rule 401 and 402. Lutchman is, of course, free to disavow his own testimony, just as Martinez is free to contradict Lutchman. There is no basis to preclude the two defendants' competing testimony.

**POINT XIV**

**PLAINTIFF'S PRIOR LAWSUIT AND VERDICT IN
JENNINGS V. YURKIW, 14 CV 6377 (SMG)**

The plaintiff does not intend to introduce his prior lawsuit against members of

the NYPD or the favorable verdict he obtained.[1] Still, plaintiff has testified that he has been

assaulted by police officers previously and that he was fearful of the these officers at the time

of this encounter. If defendants challenge these assertions or call this testimony into

question,  plaintiff should be able to introduce evidence that he did pursue his claim and was

a prevailing party. Having said that, it may well be preferable for the parties to avoid the issue

altogether.

**POINT XV**

**DEFENDANTS SHOULD BE PRECLUDED FROM
INTRODUCING EVIDENCE OF PLAINTIFF'S 2009
MISDEMEANOR CONVICTION**

The defendants seek to introduce plaintiff's conviction from November 2009

for fraudulent accosting under N.Y. Penal Law §165.30(1), which is also a Class A

misdemeanor. As also set forth in his own motion *in limine*, Plaintiff was 18 years-old at the

time of his plea and he received as a sentence a conditional discharge grounded on three days

of community service. Notably, the defendants point solely to the statutory title and language

in support of their motion. They have never served and do not offer now the underlying

---

[1]  Plaintiff received a verdict on his cause of action for excessive force against three NYPD officers
and was awarded $500,000 in compensatory damages and a total of $2.5 million against the three
officers. The Court granted remittitur for a total award of $255,000, but rejected defendants' attempt
to set aside liability or the finding that punitive damages were appropriate. A trial on damages is
scheduled for April 1, 2019.

complaint or instrument setting out any factual allegations against plaintiff, nor do they cite to plaintiff's allocution or other documents concerning this matter. There is thus no means for evaluating plaintiff's conduct or otherwise determining if this extremely stale misdemeanor provides any basis for admission under Fed. R. Evid. 609(a)(2).

The statute and relevant subsection for which plaintiff plead guilty reads:

> A person is guilty of fraudulent accosting when he accosts a person in a public place with intent to defraud him of money or other property by means of a trick, swindle or confidence game.

N.Y. Penal Law §165.30(1) (McKinney). The plain language of this subsection criminalizes (i) accosting someone (ii) with the <u>intent</u> to defraud that person. The actual making of statements further to the confidence game, are governed by §165.30(2). That the plaintiff was charged only with intent evinces an absent of any fraudulent statements on his part.

Under Rule 609(a)(2), "for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement." Fed. R. Evid. 609. Hence the question is whether the mere fact that plaintiff pled guilty to accosting somebody with the intent to defraud him is sufficient to warrant admission. The defendants have failed to produce any evidence of such conduct by the then-teenage plaintiff, whose sentence of three days community service followed by a conditional discharge was *de minimis*. This failure is fatal to defendants' attempt to circumvent the prohibitions imposed by Rule 609(a).

Even if the Court were to find that evidence of the more than nine year-old

conviction, absent more, could satisfy the stringent requirements of Rule 609(a)(2), the undue prejudice of such admission here would greatly outweigh whatever scintilla of probative evidence could be scraped from the admission of this conviction. The conviction should be precluded, both because it fails to satisfy Rule 609(a)(2), and because it would be grossly and disproportionately prejudicial under Rule 403.

**[Remainder of Page Intentionally Blank]**

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Court deny defendants' motion in all respects and grant plaintiff the relief requested herein, and all other relief that this Court deems necessary and appropriate.

Dated:   New York, New York
         December 19, 2018

Attorneys for Plaintiff

THE RAMEAU LAW FIRM
16 Court Street, Suite 2504
Brooklyn, New York 11241
(718) 852-4759

s/Amy Rameau
_____
By: Amy Rameau, Esq.


LUMER LAW GROUP
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060


s/Michael Lumer

_____

By: Michael Lumer, Esq.


cc:      All counsel of record (By ECF)